UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PAINTERS DISTRICT COUNCIL NO. 2, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:12-CV-00492 ERW |
| SUSTAINABLE CONSTRUCTION, GROUP, LLC., et al., | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion for Creditor's Bill in Equity and to Pierce the Corporate Veil. [ECF No. 37].

**I.  BACKGROUND**

Plaintiffs filed a Motion for Creditor's Bill in Equity and to Pierce the Corporate Veil on May 6, 2016. [ECF No. 37]. On October 8, 2013, this Court entered a Consent Judgment against Defendants Sustainable Construction Group, LLC ("Sustainable Construction") and John O'Leary, in the amount of $83,143.00 for delinquent contributions, liquidated damages, interest, attorney's fees, and costs owed to Plaintiffs under collective bargaining agreements as a result of Plaintiffs' lawsuit brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. [ECF No. 32]. To date, Plaintiffs have only collected $17,357.97, leaving $65,785.03 of the Consent Judgment amount unpaid. [ECF No. 37-1, p. 1]. Plaintiffs move the Court for equitable relief in the form of a creditor's bill, to allow Plaintiffs to satisfy the judgment entered against Sustainable Construction. [ECF No. 37]. Plaintiffs seek to pierce the corporate veil of Sustainable Construction and to permit Plaintiffs to satisfy the judgment against its alleged alter

1

ego, Sustainable Contracting Group, Inc. ("Sustainable Contracting"). [ECF No. 37]. Defendants did not file a response to the motion and Plaintiffs' motion is unopposed.

The two corporations hold many similarities related to their business. Sustainable Construction was operating as a construction company from approximately 2007 until 2010. [ECF No. 37-8, pp. 9-10]. Originally, Sustainable Construction was equally owned by four members; George Mathes ("Mathes"), John O'Leary ("O'Leary"), John Nighswander, and James Butler. *Id.* at p. 14. In 2009, Mathes and O'Leary bought the other two members out, and retained equal membership of Sustainable Construction. *Id*. Also in 2009, Sustainable Construction stopped accepting new contracts and worked to complete all outstanding contracts. *Id.* at p. 26. Towards the end of 2009, while Sustainable Construction was completing their final contracts, Sustainable Contracting was formed with Mathes and O'Leary as principal owners. *Id.* at p. 22. By early 2010, Sustainable Contracting assumed all functional aspects of Sustainable Construction, including leasing the equipment owned by Sustainable Construction. *Id.* at pp. 22, 26. Along with overtaking the functional aspects of Sustainable Construction, Sustainable Contracting also took over Sustainable Construction's customer base. *Id.* at p. 37. Sustainable Contracting "picked up where Sustainable Construction left off," and Sustainable Construction has not performed any work since roughly the end of 2009. *Id.* at p. 38.

Sustainable Construction primarily performed infrastructure repair using high-strength composites, did corrosion protection work, and general industrial fittings. *Id.* at p. 33. Sustainable Contracting primarily performs structural repair with the use of high-strength composites. *Id*. Both companies have employed the same employees in the same positions. Sustainable Construction initially employed Tim Irvin, the director of operations, Frank Bolin, the safety director, and Bob Durham, quality control, and when Sustainable Contracting took

over Sustainable Construction's operations, Tim Irvin, Frank Bolin, and Bob Durham retained their same position at Sustainable Contracting. *Id.* at p. 28. Sustainable Construction owns and leases a building located at 115 2nd Avenue, Edwardsville, IL 62025, to Sustainable Contracting, without a written lease. *Id.* at pp. 15-16. However, Sustainable Contracting continually pays rent to Sustainable Construction for their occupation of the building. *Id.* at pp. 15-17, 19.

Sustainable Construction stopped all operations on January 1, 2010, transferring of all functions to Sustainable Contracting and the cessation of payroll from Sustainable Construction. *Id.* at pp. 25-26. Sustainable Construction had ceased all business operations over one year prior to signing the consent judgment with Plaintiffs on February 28, 2013. [ECF No. 30, p. 1]. On or about February 28, 2013, Sustainable Construction entered into a promissory note and settlement agreement with Plaintiffs in the amount of $83,143.00. [ECF No. 37-7, p.1]. Sustainable Construction ceased performance under the promissory note and Plaintiffs moved for this Court to enter a consent judgment for the remainder of the promissory note. [ECF No. 31]. This Court entered the Consent Judgment against Sustainable Construction and O'Leary for the amount of $65,785.03, on October 8, 2013. [ECF No. 32]. Plaintiffs registered the judgment in the U.S. District Court for the Southern District of Illinois, on March 4, 2015. [ECF No. 37-7, p. 2]. Plaintiffs filed a garnishment on March 10, 2015, with Scott Credit Union seeking any monies held in a bank account for Sustainable Construction and/or O'Leary. *Id.* On April 1, 2015, Scott Credit Union filed its answers to the garnishment interrogatories, thereby informing Plaintiffs no monies were contained in any accounts owned by Sustainable Construction or O'Leary. *Id.*

On August 27, 2015, Plaintiffs filed a garnishment with Sustainable Contracting to recover the rental payments it was paying to Sustainable Construction. *Id.* Plaintiffs never received a certified mail receipt or any responses to the garnishment interrogatories from

3

Sustainable Contracting. *Id.* On October 19, 2015, Plaintiffs filed another garnishment with Sustainable Contracting in an attempt to recover the rental payments made to Sustainable Construction. *Id.* at p. 3. The return date for the garnishment interrogatories was November 18, 2015, and the court did not grant Plaintiffs' Motion to Appoint a Private Process Server until December 21, 2015, 33 days after the return date. *Id.* On November 30, 2015, Plaintiffs filed a third garnishment with Sustainable Contracting to recover the rental payments being paid to Sustainable Construction. *Id.* Sustainable Construction has no accounts receivable, no deposit accounts with any banks, and very few assets. [ECF 37-8, pp. 16-17]. O'Leary has a bank account with no balance and the only assets he possesses are personal in nature and not affiliated with Sustainable Construction. [ECF No. 37-9, pp. 9, 12].

## II. STANDARD

In the absence of a controlling federal statute, the district court has the same authority to aid judgment creditors in supplementary proceedings as is provided to state courts under local law. *United States ex rel. Goldman v. Meredith*, 596 F.2d 1353, 1357 (8th Cir. 1979). The Court has supplemental jurisdiction, under 28 U.S.C. § 1367, regarding a motion for a creditor's bill in equity which relates to an underlying ERISA delinquency. *Greater St. Louis Construction Laborers Welfare Fund v. Sunrise Const., Inc.*, 2009 WL 73664, at *1 (E.D. Mo. 2009). The remedy of a creditor's bill in equity is available under Missouri law. *H.H. Robertson Co., Cupples Products Div. v. V.S. DiCarlo General Contractors, Inc.*, 994 F.2d 476, 477 (8th Cir. 1993).

Issuance of a creditor's bill in equity is an equitable remedy "available to a creditor who seeks to enforce the payment of debts out of assets which cannot be reached by traditional means of execution on a judgment established in a suit at law." *Shockley v. Harry Sander Realty Co.*,

4

771 S.W.2d 922, 924 (Mo. Ct. App. 1989) (citing Dobbs, Handbook on the Law of Remedies § 1.3 at 11 (1973); *General Grocer Co. v. Ahlemeier*, 627 S.W.2d 61, 64 (Mo. App. 1981); *Publicity Building Realty Corp. v. Thomann*, 183 S.W.2d 69, 72 (Mo. 1944)). A creditor's bill in equity may be brought: (1) to set aside a fraudulent transfer; or (2) to discover assets the judgment debtor has hidden. *Id.* A creditor must exhaust her legal remedies before proceeding in equity to pierce the corporate veil. *Buckley v. Maupin*, 125 S.W.2d 820, 823 (Mo. 1939). A return of nulla bona, upon execution, is evidence of the exhaustion of remedies, but action on the execution may be dispensed where the judgment debtor has been shown to be insolvent. *Id.* Only creditors who have a judgment on the property, have the ability to maintain an action to set aside a fraudulent conveyance in order to receive the monies owed to them through their judgment. *Buckley*, 125 S.W.2d at 823-24. The alter ego corporation against whom the creditor's bill is brought need not have been parties to, or even have had formal notice of earlier proceedings. *H.H. Robertson*, 994 F.2d at 476.

### III. DISCUSSION

Plaintiffs argue they are entitled to a creditor's bill in equity in order to satisfy the judgment against Sustainable Construction and John O'Leary from the assets of Sustainable Contracting. [ECF No. 37-1, p. 15]. Plaintiffs also contend the corporate veil of Sustainable Construction must be pierced because it is controlled by Sustainable Contracting and the formation of Sustainable Contracting has prevented Plaintiffs from collecting their debts. *Id.*

In Missouri, the creditor's bill enables a judgment creditor to trace the value of the goods and services rendered to an empty-shell corporation to the parties behind such corporation who have received and benefited from the property or services. *Shockley*, 771 S.W.2d at 925. Through a creditor's bill in equity, a judgment creditor can pierce the corporate veil of its debtor

5

and satisfy the judgment from the assets of the real parties in interest. *Fleming Companies, Inc. v. Rich*, 978 F.Supp. 1281, 1294 (E.D. Mo. 1997). The prerequisites to obtaining a creditor's bill are the existence of a judgment, the issuance of execution against said judgment, and a nulla bona return. *Shockley*, 771 S.W.2d at 925. No new judgment is needed against those wrongfully in possession of the judgment debtor's assets. *Id.*

It is clear from the record Plaintiffs obtained a consent judgment against Sustainable Construction on October 8, 2013. [ECF No. 32]. Plaintiffs have made multiple attempts to garnish payment on this judgment from Sustainable Construction and Sustainable Contracting, and have been unsuccessful. [ECF Nos. 37-7, 37-8, 37-9]. Plaintiffs have tried every available venue for procuring their amount owed on the consent judgment, therefore they are not required to make any further collection attempts against Sustainable Construction and are entitled to a creditor's bill in equity.

Courts may consider piercing the corporate veil of an entity upon a finding the entity is the alter ego of the defendant judgment debtor. *Greater St. Louis Const. Laborers Welfare Fund v. Mertens Plumbing & Mech., Inc.*, 552 F.Supp.2d 952, 955 (E.D. Mo. 2007). An entity is the alter ego of the defendant judgment debtor through common control by an analysis of the following factors: whether the change in operations is unlawfully motivated, whether the new employer is owned or controlled by the old employer, and whether the new operator has the same business purpose, operations, equipment, customers, management, and supervision as the old operation. *Woodline Motor Freight, Inc. v. N.L.R.B.*, 843 F.2d 285, 288 (8th Cir. 1988).

Missouri courts will hold a defendant liable for the torts of another corporation under the "alter ego" rule if the plaintiff can establish the alter ego's control was used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or

dishonest and unjust act in contravention of plaintiff's legal rights. *Radaszewski by Radaszewski v. Telecom Corp.*, 981 F.2d 305, 306 (8th Cir. 1992). Following Plaintiffs' demonstration of control and breach of duty, Plaintiffs then must prove the breach of duty proximately caused the injury complained of. *Id.*

Plaintiffs contend Sustainable Contracting must be found to be under the control of Sustainable Construction from the sheer commonality of: ownership; management and supervision; business purpose; operations; customers; equipment; employees; and facilities. [ECF No. 37-1, p. 5]. Sustainable Construction and Sustainable Contracting are independent entities in form only. In determining whether one corporation exercised control over another to the extent necessary to pierce the corporate veil, the Court looks to a number of factors: common ownership between the two corporations; the management and supervision of both corporations; the business purpose and operations of both corporations; if there are common customers to both corporations; whether similar equipment is used by both corporations; if both corporations have any of the same employees; and if the two corporations share any of the same facilities. *H.H. Robertson*, 789 F.Supp. at 1000. Mathes and O'Leary attained co-ownership of Sustainable Construction after buying out the other two partners, and they were the founders and owners of Sustainable Contracting. [ECF No. 37-8, pp. 14, 22]. Both Sustainable Construction and Sustainable Contracting operates in structural repairs dealing with high strength composites, and Sustainable Contracting assumed all functional aspects of Sustainable Constructions business after its creation. *Id.* at pp. 33, 37. After Sustainable Contracting took up Sustainable Constructions operations, they also leased the building and all the old equipment from Sustainable Construction. *Id.* at pp. 15-17, 22, 26. Just as Sustainable Contracting took over Sustainable Construction's facility and tools, Tim Irvin, Frank Bolin, and Bob Durham, were all

7

employed at Sustainable Contracting at one point in time. *Id.* at p. 28. The test of alter ego status is a flexible one, as such, the lack of any one factor will not bar the finding of alter ego status. *Midwest Precision Heating and Cooling v. NLRB*, 408 F.3d 450, 459 (8th Cir. 2005). It is clear after analyzing the facts with the prescient factors Sustainable Contracting is an alter ego of Sustainable Construction.

Plaintiffs argue Sustainable Construction abandoned its corporate operations, transferred all of its business operations to Sustainable Contracting, and then knowingly signed the consent judgment with the Plaintiffs years after Sustainable Construction had terminated all functional operations. [ECF No. 37-1, p. 11]. After establishing Sustainable Construction has control of Sustainable Contracting, Plaintiffs must show such control must have been used by the Defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of Plaintiff's legal rights. *Radaszewski by Radaszewski*, 981 F.2d at 306. The showing of fraud is not necessary to meet this burden and the corporate veil may be pierced when a corporation is undercapitalized, or when its assets are stripped to avoid creditors. *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 40 (Mo. 1999); *Sunbelt Envtl. Services, Inc. v. Rieder's Jiffy Mkt., Inc.*, 138 S.W.3d 130, 135 (Mo. App. Ct. 2004).

Sustainable Construction was undercapitalized because it only leased the building to Sustainable Contracting while still having a legal obligation to fulfill its consent judgment to Plaintiffs. Sustainable Construction maintains a legal duty to pay the judgment they entered into with Plaintiffs and have circumvented this duty by creating and operating Sustainable Contracting. In light of these facts, it is clear Sustainable Construction has breached their legal

duty to pay the consent judgment to Plaintiffs by transferring all operations to their alter ego corporation, Sustainable Contracting.

Once a plaintiff has established the two corporations are alter egos and by the creation of the alter ego have breached their legal duty to the plaintiff; plaintiffs must show the control and breach of duty proximately caused the injury. *Radaszewski by Radaszewski*, 981 F.2d at 306. Plaintiffs have clearly been injured, in not receiving $65,785.03 of the damages in the Consent Judgment, and their injury was proximately caused by Sustainable Construction's conduct. *Mobius Management Systems, Inc. v. West Physician Search, LLC.*, 175 S.W.3d 186, 189 (Mo. Ct. App. 2005). Sustainable Construction's undercapitalization is the sole reason they are unable to pay the consent judgment. Therefore, all three elements required to pierce the corporate veil—control, breach of duty, and proximate cause—are present. It is for these reasons it is appropriate for the Court to pierce the corporate veil and grant a motion for a creditor's bill in equity.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Creditor's Bill in Equity and to Pierce the Corporate Veil [ECF No. 37], is **GRANTED.**

So Ordered this 3rd day of August, 2016.

*/s/ E. Richard Webber*

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**